Nicholas **MALKENTZOS, individually, and on Behalf of "MM," an infant, Plaintiff–Appellee,**

v.

Barbara A. **DeBUONO, as Commissioner of the New York State Department of Health; The New York State Department of Health; The New York City Department of Mental Health, Mental Retardation and Alcoholism Services, Defendants–Appellants.**

No. 752, Dockets 96–7569(L), 96–7589(CON).

United States Court of Appeals, Second Circuit.

Argued Sept. 25, 1996.

Decided Dec. 5, 1996.

---

Victoria A. Kummer, New York City (Alan B. Miller and Harris J. Yale, Weil, Gotshal & Manges, on the brief), for Plaintiff–Appellee.

Joseph I. Lauer, New York City (Paul A. Crotty, Francis F. Caputo and Elizabeth A. Wright, Corporation Counsel of the City of New York, on the brief), for Defendant–Appellant New York City Department of Mental Health, Mental Retardation and Alcoholism Services.

Thomas R. Sofield, Assistant Attorney General, State of New York, New York City (Dennis C. Vacco, Attorney General of the State of New York, Kay–Ann D. Porter, Assistant Attorney General, State of New York, of counsel), for Defendants–Appellants De-Buono and New York State Department of Health.

Before: WALKER, JACOBS, Circuit Judges, and CARMAN, Chief Judge, United States Court of International Trade, sitting

by designation.*

CARMAN, Chief Judge:

## BACKGROUND

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–85 (1994), establishes the standards states must meet in providing education services to disabled infants and children in order to receive financial assistance from the federal government. Part H of the IDEA requires states to provide "appropriate early intervention services to all infants and toddlers with disabilities and their families." 20 U.S.C. § 1476(a) (1994). The statute defines "infants and toddlers with disabilities" as "individuals from birth to age 2, inclusive." 20 U.S.C. § 1472(1) (1994). Similarly, states must provide "a free appropriate public education" to disabled individuals between the ages of three and twenty-one years old to be eligible to receive federal funds under part B of the IDEA. 20 U.S.C. § 1412(1), (2)(B) (1994).

In the Fall of 1994, Nicholas Malkentzos and his wife sought help for their son "MM", who was born on March 1, 1993, believing that he was not developing normally. "MM" would not permit anyone to hold him and appeared unable to focus on individuals speaking to him. Based on the recommendation of their pediatrician, the Malkentzos consulted the New York City Department of Mental Health, Mental Retardation and Alcoholism Services (DOMH) to determine whether "MM" was eligible to receive early intervention services.

The DOMH referred the Malkentzos to Children at Play (CAP), a state-approved early intervention service provider, so that a core evaluation could be performed to determine whether "MM" was eligible for publicly provided early intervention services. At CAP, "MM" was evaluated by a psychologist, a special educator, a speech therapist and an occupational therapist, and was diagnosed as experiencing Generalized Developmental Delay. This diagnosis made "MM" eligible to receive early intervention services.

Once "MM"'s eligibility to receive early intervention services was established, an Individualized Family Service Plan (IFSP) was drafted which specified "MM"'s individual treatment needs as well as the services which would be provided to "MM" to satisfy those needs. "MM"'s IFSP, as initially drafted, provided for 5½ hours of early intervention services per week, consisting of a "structured play" program offered by CAP.

Following "MM"'s evaluation by the professionals at CAP, the Malkentzos' pediatrician suggested "MM" might be autistic and recommended he be examined by a pediatric neurologist. On November 22, 1994, "MM" was examined by Dr. Regina DeCarlo, who diagnosed "MM" to be autistic and recommended "MM" be enrolled in an Applied Behavioral Analysis (ABA) program for a minimum of twenty hours per week.

After receiving Dr. DeCarlo's diagnosis and recommendations, Mr. Malkentzos attempted to enroll "MM" in an ABA program. Mr. Malkentzos first approached CAP to request it provide ABA services to "MM", but was informed that CAP did not offer such services. Mr. Malkentzos then approached the Eden II school, a state-certified program for autistic children ages three and older which uses the ABA modality. While "MM" was too young to enter the Eden II program, Joanne Gerenser, Eden II's Director of School Services, assisted Mr. Malkentzos in organizing a treatment program for "MM" and in hiring individuals to provide in-home ABA services. As part of the arrangement, Mr. Malkentzos hired local college students to provide "MM" with the twenty hours of ABA services recommended by Dr. DeCarlo. Unlike Ms. Gerenser and the other providers at CAP who administered early intervention services to "MM", the college students hired by Mr. Malkentzos held no state certification or license for the delivery of ABA services.

In late 1994, following signs "MM" was reacting favorably to ABA services, Mr. Malkentzos contacted the DOMH's regional director for early intervention services to request that "MM"'s IFSP be modified to provide forty hours of ABA per week. Mr.

---

* The Honorable Gregory W. Carman, Chief Judge, U.S. Court of International Trade, sitting by des-

ignation, became Chief Judge after oral argument.

Malkentzos was informed the ABA services he requested were not available due to a shortage of qualified providers and his request was denied. As a result of this denial, the Malkentzos continued to employ college students to deliver ABA services to "MM".

On February 6, 1995, Mr. Malkentzos withdrew "MM" from the CAP program, based on his belief that the "structured play" services offered by CAP were hindering the progress "MM" was making through ABA. The following day, "MM"'s IFSP was amended to provide 8½ hours of ABA services per week, consisting of six hours of in-home ABA special education services and 2½ hours of ABA speech therapy at the Staten Island University Hospital.

Slightly more than one week after his IFSP was modified, "MM" was examined by Dr. Ira Cohen, a psychologist with a specialty in autism. Dr. Cohen recommended "MM" receive a minimum of forty hours per week of ABA services. Following Dr. Cohen's diagnosis and recommendation, Mr. Malkentzos made a second request that "MM"'s IFSP be modified to provide additional ABA services. This second request also was denied based on the inability of the DOMH to find any providers licensed to deliver ABA to children ages three and under. On or about April 24, 1995, DOMH offered to amend "MM"'s IFSP to provide him with 12½ hours of "structured play" services per week at the Elizabeth Pouch Center. The plaintiff rejected this offer, opting instead to continue to employ the college students in order to ensure "MM" received the recommended forty hours of ABA services per week.

On February 15, 1995, Mr. Malkentzos requested an impartial hearing to challenge the appropriateness of the early intervention services provided to "MM" under the IFSP as modified on February 8, 1995. In a Decision and Order issued on June 9, 1995, State Department of Health Administrative Law Judge Kimmer found there was a shortage of qualified personnel available to provide the additional ABA services requested by Mr. Malkentzos, but declined to order the DOMH to provide "MM" with forty hours per week of ABA. Additionally, Judge Kimmer determined the college students hired by Mr. Malkentzos "[were] not qualified personnel as defined by the [state] statute and regulations, and therefore their services [were] not early intervention services under the Early Intervention Program and [could not] be included in the IFSP nor can they be paid for by the program." On July 26, 1995, Mr. Malkentzos filed suit in the United States District Court for the Southern District of New York appealing Administrative Law Judge Kimmer's findings and decision. Mr. Malkentzos filed suit pursuant to 20 U.S.C. § 1480(1), which gives aggrieved parties the right to bring a civil action challenging the administrative determination in federal district court.[1]

At Mr. Malkentzos' request, Judge Motley convened a pre-trial conference on August 24, 1995, and directed the parties to submit a stipulation of agreed and disputed facts. Following the submission of these materials, and shortly before oral argument was scheduled to occur, a dispute arose as to whether the state was reimbursing uncertified individuals for providing ABA treatment to children less than three years old in Westchester County. In order to resolve this issue, Judge Motley ordered a hearing be held on January 23, 1996, to determine what services were being provided in Westchester County. Near the conclusion of this hearing, Judge Motley inquired whether "plaintiff ha[d] made in effect a motion for a preliminary injunction." Plaintiff's counsel stated that they would like to seek a preliminary injunction. Counsel for plaintiff and defendant were present when this statement was made in the District Court, and none objected to Judge Motley's recognizing plaintiff's motion for a preliminary injunction. After recognizing plaintiff's motion for a preliminary injunction, with all parties present Judge Motley ordered the parties to submit proposed findings of fact and conclusions of law with

1. Courts reviewing administrative determinations under part H of the Individuals with Disabilities Education Act are empowered to "hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1480(1) (1994).

respect to the preliminary injunction motion. The parties submitted these papers and on April 15, 1996, Judge Motley entered a preliminary injunction requiring the defendants (1) to reimburse the plaintiff for retrospective out-of-pocket expenses incurred in compensating uncertified providers for in-home ABA therapy as of the date of the injunction, and (2) either (a) to provide prospectively forty hours of ABA services per week to "MM", or (b) to continue to reimburse plaintiff for privately procuring such services. Defendants filed the present appeal challenging Judge Motley's entry of the preliminary injunction.

## DISCUSSION

■ While this Court reviews the entry of a preliminary injunction for abuse of discretion, we review the court's conclusions of law *de novo*. *See County of Seneca v. Cheney*, 12 F.3d 8, 11 (2d Cir.1993); *Disabled Am. Veterans v. United States Dep't. of Veterans Affairs*, 962 F.2d 136, 140 (2d Cir. 1992). A court entering a preliminary injunction abuses its discretion when it makes " 'an error of law, an error of fact, or an error in the substance or form of the trial court's order.' " *Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir.1992) (quoting *Coca–Cola Co. v. Tropicana Prod., Inc.*, 690 F.2d 312, 315 (2d Cir.1982)); *see also Long Island R.R. v. International Ass'n of Machinists*, 874 F.2d 901, 906 (2d Cir. 1989) (injunctions based on error of law constitute abuse of discretion).

■ Entry of a preliminary injunction is appropriate where the party seeking the injunction establishes: (a) the injunction is necessary to prevent irreparable harm, and (b) either (i) likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits of the claim as to make it fair ground for litigation, and that a balance of the hardships tips decidedly in favor of the movant. *See, e.g., Able v. United States*, 44 F.3d 128, 130 (2d Cir.1995); *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 77–78 (2d Cir.1994); *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979). Additionally, a party moving for a mandatory injunction, which alters the status quo by commanding some positive act, must meet a higher standard. *See Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 28, 33–35 (2d Cir.1995); *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985) (mandatory injunctions should be entered "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief") (internal quotations and citations omitted); *see also SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir.1990) ("clear" showing standard requires moving party to demonstrate greater likelihood of success than parties moving under traditional standard).

In challenging the District Court's preliminary injunction, appellants contend the retrospective aspect of the injunction rests on monetary harm alone. Further, they contend the prospective aspects of the injunction, although ostensibly resting on concern that discontinuation of "MM" 's ABA therapy would cause irreparable harm, in fact rest on insufficient evidence that the plaintiff is financially unable to shoulder the costs of providing the treatment. Accordingly, appellants note Mr. Malkentzos' only harm is monetary, and state that monetary damages are insufficient to satisfy the irreparable injury standard required for the entry of a preliminary injunction.

■ With respect to the injunction's retrospective relief, we find the District Court abused its discretion in ordering defendants to reimburse plaintiff's out-of-pocket expenses incurred in providing "MM" with ABA therapy. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989) ("The injury must be one requiring a remedy of more than mere money damages. A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation.").

The District Court cites several cases for the proposition that monetary damages may be awarded when they are incidental to an award of injunctive relief. Those cases, however, do not address the award of monetary damages incident to the entry of a prelimi-

nary injunction. Rather, they address the award of monetary damages that are incidental to the award of permanent injunctive relief. *See Tull v. United States,* 481 U.S. 412, 416, 107 S.Ct. 1831, 1834–35, 95 L.Ed.2d 365 (1987) (district court granted permanent injunction ordering defendant to remove fill material and restore wetlands); *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 290–92, 80 S.Ct. 332, 334–36, 4 L.Ed.2d 323 (1960) (holding district court has authority pursuant to § 17 of the Fair Labor Standards Act of 1938 to order reimbursement for lost wages resulting from employment discrimination, as well as equitable authority to enter a permanent injunction ordering cessation of future discrimination and reinstatement of discharged employees). While it would appear the IDEA grants the District Court substantial discretion in reviewing determinations made in the impartial hearings and in awarding relief to injured parties, the statute will not support an award which fails to satisfy the standards established in this Circuit for the entry of a preliminary injunction. Therefore, the Court finds the portion of the preliminary injunction ordering reimbursement of plaintiff's past out-of-pocket expenses is an abuse of discretion, and remands to the District Court the issue of reimbursement of Mr. Malkentzos' expenditures to uncertified providers of ABA services to be determined at the trial.

■ Additionally, appellants challenge the preliminary injunction's requirement that they either provide "MM" with forty hours of ABA services per week or reimburse plaintiff's prospective expenditures incurred in providing ABA therapy to his son. While we note above the standard this Court will apply in reviewing the entry of a preliminary injunction, a condition precedent to our review is the presence of a live controversy between the parties. *See Dennin v. Connecticut Interscholastic Athletic Conference, Inc.,* 94 F.3d 96, 100 (2d Cir.1996) ("An appeal becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'") (quoting *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982)). Before this Court can consider an appeal, "there must be a continuing controversy that

will be settled by a decision of this Court." *Dennin,* 94 F.3d at 100. Without a live controversy, any opinion issued by this Court would violate the long-standing rule against advisory opinions.

■ It is clear the controversy that existed between plaintiff and defendants at the time Judge Motley entered the preliminary injunction requiring defendants to provide "MM" with forty hours of ABA services per week or to reimburse plaintiff for his prospective out-of-pocket expenditures no longer exists. At oral argument before this Court, counsel for the appellant noted that "MM" has "aged out" of his eligibility to receive early intervention services from the New York City DOMH. Under New York law, the New York State Department of Health is responsible for providing early intervention services to children less than three years old, N.Y.Pub.Health Law § 2541(12) (McKinney 1995), while the New York State Department of Education is responsible for providing special education services to children between the ages of three and twenty-one years old. *See* 20 U.S.C. § 1412(2)(b), (6) (1994). The fact that "MM" is no longer eligible to receive early intervention services renders moot the appellants' challenge of Judge Motley's order requiring the DOMH to provide "MM" with forty hours of ABA services per week or to reimburse plaintiff's prospective expenditures incurred in providing ABA therapy for his son. Therefore, this Court does not reach the merits of this issue and vacates as moot the portion of the preliminary injunction requiring appellants to provide ABA services to "MM" or to reimburse his father for out-of-pocket expenses incurred in obtaining those services privately.

Appellants also assert the District Court's entry of a preliminary injunction violates Rule 65(a)(1) of the Federal Rules of Civil Procedure because plaintiff never moved for an injunction and defendants had no notice of, or an adequate opportunity to present relevant evidence and be heard on, the motion. We need not dwell on this issue because of our disposition of this case. We note, however, that while it appears the District Court gave scant notice of its intent to

issue the injunction, no party objected in the District Court, and appellants were unable to state at oral argument what new evidence or arguments they would have presented had the District Court given them the chance.

## CONCLUSION

This Court vacates the preliminary injunction and remands to the District Court the issue of reimbursement of plaintiff's retrospective expenditures to uncertified providers of ABA services finding the District Court abused its discretion in issuing a preliminary injunction ordering defendants to pay monetary damages to plaintiff for past expenditures on ABA services. Further, this Court vacates as moot those portions of the preliminary injunction which order defendants to provide ABA services to plaintiff's son or reimburse plaintiff's prospective expenditures on ABA services.