**SEG SPORTS CORP. and Miracle Promotions Incorporated, Plaintiffs,**

v.

**The STATE ATHLETIC COMMISSION, a Division of the Department of State of the State of New York, Floyd Patterson, and Rose Trentman, individually and in their capacities as members of the New York State Athletic Commission, Defendants.**

No. 97 Civ. 0712 (MGC).

United States District Court, S.D. New York.

Feb. 6, 1997.

Simon, Meyrowitz, Meyrowitz & Schlussel by David H. Meyrowitz, Paul Hecht, Mitchell Shenkman, New York City, for Plaintiffs.

Dennis C. Vacco, Attorney General of the State of New York, by Joel Graber, Assistant Attorney General, New York City, for Defendants.

### OPINION

CEDARBAUM, District Judge.

This is an action under 42 U.S.C. § 1983 for damages and under the United States Constitution and the New York State Constitution for declaratory and injunctive relief. The defendants are the State Athletic Commission and two of its members. The dispute centers on the relationship between the recently enacted state statute that authorizes "combative sports" events and the Commission's new rules regulating such events.

Plaintiff SEG Sports Corporation produces and promotes the Ultimate Fighting Championships and has been doing so for the past three years. SEG plans to put on an Ultimate Fighting Championship in Niagara Falls, New York on February 7, 1997, one day after the effective date of the statute. On January 30, 1997, the New York State Athletic Commission issued temporary rules that impose certain requirements on the participants in the Ultimate Fighting Championship. Plaintiffs seek by order to show cause a preliminary injunction restraining the Commission from enforcing the new rules.

I held a hearing on February 5, 1997 at which the parties were permitted to present evidence. Plaintiffs called four witnesses, two officers of SEG, one referee, and one closed circuit television intermediary who had contracted with SEG for television access to the scheduled Ultimate Fighting Championship.

Although plaintiffs make a strong showing that one of the new rules, the requirement of boxing gloves, is in direct conflict with the statute, plaintiffs' motion for a preliminary injunction is denied because plaintiffs have not shown irreparable harm, the threshold requirement for issuance of a preliminary injunction.

### The Facts

Ultimate Fighting is the trade name for· a combative sport developed by plaintiff SEG. The Ultimate Fighting Championship is a competition among athletes from different fighting sports. Both grappling and striking are permitted because Ultimate Fighting combines many types of fighting. Some of the techniques the athletes use come from sumo, kick-boxing, tae kwon do, jiu-jitsu, karate, Greco–Roman wrestling, judo, shoot-fighting, and kempo. The competitors fight in an octagonally shaped ring, and Ultimate Fighting Championships produced by SEG in the past have consisted of two preliminary matches, a single-elimination tournament with eight participants, and a match between a reigning champion and a prior victor. To date, SEG has produced and promoted thirteen such Ultimate Fighting Championships, twelve of them in states other than New York, and has televised them worldwide by cable television and satellite. In August of 1995, SEG staged an Ultimate Fighting Championship in Buffalo, New York.

The participants in the Ultimate Fighting Championships have been subject to the rules established by SEG. Among other things, the rules provide for mandatory protective gear for the mouth and groin, prohibition of eye gouging, biting, and throat strikes, medical testing, and supervision by referees and judges. The rules also provide for the fight to be stopped upon the request of a competitor, coach, doctor, or referee. There is another business that stages similar competitions under the trade name "Extreme Fighting" and follows slightly different rules.

In October of 1996, the New York State Legislature amended the statute governing boxing and wrestling to add "combative sports." The amended statute takes effect today, February 6, 1997, 120 days after its enactment. The statute defines "combative sports" as "any professional mixed martial arts bout or event wherein the participants deliver, or are not forbidden by the applicable rules thereof from delivering kicks, punches or blows, other than eye gouging, biting, throat strikes and kicks if hard sole shoes are worn, to the body of an opponent." N.Y.Laws of 1920, ch. 912 § 5–a.1(c), McKinney's 1996 Sess. Law News of N.Y., ch. 708, s. 7708 (the amendments are referred to hereinafter as "N.Y. Laws of 1920, ch. 912").

**204**

The statute requires the procurement of a license from the New York State Athletic Commission to stage a "combative sports" event. The statute gives the Commission "sole discretion, management, control and jurisdiction over such combative sports bouts or events to be conducted, held or given within the state of New York and over all licenses to any and all persons who participate in such combative sports bouts." N.Y. Laws of 1920, ch. 912 § 5–a.1(d), 3 and 4.

After passage of the statute, plaintiffs scheduled and made the necessary arrangements to stage an Ultimate Fighting Championship in Niagara Falls on February 7, 1997, the day after the statute's effective date. Plaintiffs sold over $150,000 in tickets for the live audience, and made plans to broadcast the event by cable television and satellite. In arranging the event, plaintiffs entered into contracts with the Niagara Falls Convention and Civic Center, Reiss Media Enterprises, TVN Entertainment, DirecTV, Viewers Choice, and the individual fighters. They paid for medical testing and made arrangements for lodging, referees, judges, and ringside physicians.

On January 30, 1997, the New York State Athletic Commission issued temporary rules regulating "combative sports." 19 NYCRR ch. VII, Rules of the New York State Athletic Commission (1997) ("Commission Rules"). Among other things, the rules require the ring to be at least 40 feet in diameter, Commission Rules § 209.39, fighters to wear eight ounce thumbless or thumblock gloves, Commission Rules § 209.45(i), and bouts to be conducted in three or four five-minute rounds, Commission Rules § 217.3. The rules also prohibit kicks above the shoulders, head butting, choke holds, and striking or kicking a grounded opponent. Commission Rules § 217.27.

*Discussion*

Equitable relief requires a showing that there is no adequate remedy at law. Accordingly, issuance of a preliminary injunction is appropriate only when the party seeking such equitable relief demonstrates (a) irreparable harm and (b) either (i) a likelihood of success on the merits of the claim, or (ii) sufficiently serious questions going to the merits of the claim as to make it fair ground for litigation, and the balance of the hardships tipping decidedly in favor of the movant. *Malkentzos v. DeBuono,* 102 F.3d 50, 54 (2nd Cir.1996); *Woods v. Universal City Studios,* 920 F.Supp. 62, 64 (S.D.N.Y.1996).

In this case, plaintiffs are not merely seeking a prohibitory injunction, but rather a mandatory injunction that requires the New York State Athletic Commission to license them to follow their own rules, and not those of the Commission. When injunctive relief is mandatory in the sense that it will alter, rather than maintain the status quo, a heightened standard is applied. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 33–34 (2d Cir.1996); *Jacobson & Co., Inc. v. Armstrong Cork Co.,* 548 F.2d 438, 441 (2d Cir.1977).

For any injunction, the threshold requirement is proof of irreparable harm. Irreparable harm is injury for which money cannot compensate. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,* 60 F.3d at 37. The harm that plaintiffs allege is that they will have to cancel the Ultimate Fighting Championship which they have scheduled for February 7, 1997, because compliance with the Commission's rules would radically change the nature of the event. Although plaintiffs have shown that they will lose money if they cannot hold the event in accordance with their own rules, they have not shown the substantial non-monetary injury required for a preliminary injunction.

Although plaintiffs argue that if they do not stage the championship as advertised they will lose what they describe as good will, they have not persuaded me with a fair preponderance of the credible evidence that they will be unable in the future to successfully stage other performances. Plaintiffs have been in this business somewhat more than three years. No evidence was presented that their pay-per-view customers are the same from event to event or that any of their customers will refuse to view later events produced and promoted by them.

After examining the documents and evaluating the testimony of the witnesses, I find that cancellation of the Ultimate Fighting Championship in Niagara Falls is measurable in money, and that any long-range damages to plaintiffs' reputation is purely speculative. Plaintiffs have presented no evidence that their reputation among their customers will be damaged if they decide to cancel the event scheduled for February 7 because of new and unexpected New York rules. Thus, plaintiffs have not shown that without a preliminary injunction, they will be irreparably harmed. Without such a showing, a preliminary injunction may not issue.

*Conclusion*

The foregoing shall constitute my findings of fact and conclusions of law based on the submissions of the parties and the testimony at the hearing held on February 5, 1997.

For the reasons set forth above, I deny plaintiffs' motion for a preliminary injunction.

SO ORDERED.