118 F.3d 131
 119 Ed. Law Rep. 798
 Darren PHILLIP, Fred Phillip, and Marguerite Phillip,
Plaintiff-Counter-Defendant-Appellees,
v.
FAIRFIELD UNIVERSITY, Defendant-Cross-Claimant-Counter-Claimant,
The National Collegiate Athletic Association,
Defendant-Cross-Defendant-Appellant.
 No. 2033, Docket 97-7210.
 United States Court of Appeals,
Second Circuit.
 Argued May 23, 1997.
Decided July 17, 1997.
 
 John B. Farley, Hartford, CT (Halloran & Sage, James V. Somers, Hartford, CT, on the brief), for Defendant-Cross-Defendant-Appellant.
 Dan E. LaBelle, Trumbull, CT (Owens, Schine, Nicola & Donahue, Trumbull, CT), for Defendant-Cross-Claimant-Counter-Claimant.
 J. Daniel Sagarin, Milford, CT (Harris, Beach & Wilcox, LLP, David A. Slossberg, Milford, CT, on the brief), for Plaintiff-Counter-Defendant-Appellees.
 Before: WALKER, McLAUGHLIN, and PARKER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant National Collegiate Athletic Association ("NCAA") appeals from the January 27, 1997 order of the United States District Court for the District of Connecticut (Robert N. Chatigny, District Judge ), adopting the recommendation of the magistrate judge and granting plaintiff Darren Phillip a preliminary injunction enjoining the NCAA from interfering with Phillip's ability to receive financial aid and play college basketball. Because we find that the district court failed to apply the proper standard for assessing the NCAA's alleged breach of the covenant of good faith and fair dealing under Connecticut law, we remand the case to the district court.
 
 BACKGROUND
 
 2
 Having determined during the spring of 1996 that Darren Phillip, then a high school senior, failed to complete the minimum of 13 "core courses" required under the NCAA's eligibility standards, the NCAA notified Phillip that he was ineligible under NCAA guidelines to play college basketball for, or receive financial aid from, his intended college, Fairfield University ("Fairfield"). Fairfield subsequently sought a waiver of the eligibility requirements, which was denied by the NCAA on the ground that there were neither exceptional circumstances present nor independent evidence of Phillip's academic qualifications that warranted granting relief. Following the initial denial of the waiver, Fairfield proceeded through the NCAA's appellate process, ultimately appealing to the very highest level of the NCAA, the NCAA Council. In January of 1997, the Council upheld the denial of the waiver.
 
 
 3
 On October 21, 1996, Phillip moved for an injunction before the district court that would prevent the NCAA from further interfering with his opportunity to attend Fairfield and play basketball for its team. By this time, Phillip had begun attending his first semester at Fairfield (the tuition for which was paid by his mother, using her retirement fund), although he was prohibited from receiving aid or playing basketball. On November 22, 1996, Magistrate Judge Smith issued his recommendation that the preliminary injunction be granted, and on January 24, 1997, the district court overruled the NCAA's objections, and adopted the magistrate judge's recommendation, reasoning principally that Phillip both would suffer irreparable harm if the injunction were denied and was likely to prevail on his argument that the NCAA breached its duty to Phillip by arbitrarily refusing to grant him a waiver of its eligibility requirements. This appeal followed.
 
 DISCUSSION
 
 4
 This court reviews a district court's entry of a preliminary injunction for abuse of discretion, which means that we may reverse only if the district court applied an incorrect legal standard, based its decision on clearly erroneous findings of fact, or issued an injunction containing an error in form or substance. See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 999 (2d Cir.1997).
 
 
 5
 Preliminarily, we note that the parties dispute the proper characterization of this injunction and the legal test Phillip must satisfy in order to obtain injunctive relief. As a general matter, entry of a preliminary injunction is appropriate where the party seeking an injunction establishes (1) that the injunction is necessary to prevent irreparable harm and (2) either a likelihood of success on the merits or a sufficiently serious question going to the merits of the claim as to make it a fair ground for litigation plus a balance of hardships that tips decidedly in favor of the moving party. See Malkentzos v. DeBuono, 102 F.3d 50, 54 (2d Cir.1996). However, where an injunction is mandatory--that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act, see Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir.1995)--the moving party must meet a higher standard than in the ordinary case by showing "clearly" that he or she is entitled to relief or that "extreme or very serious damage" will result from a denial of the injunction. See id. at 34; Malkentzos, 102 F.3d at 54. This heightened showing is also required where the issuance of the injunction would provide the movant with substantially all the relief he or she seeks and where the relief could not then be undone, even if the non-moving party later prevails at trial. See Tom Doherty Assocs., 60 F.3d at 34-35.
 
 
 6
 Although "[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities," id. at 34, we conclude that the present injunction is more appropriately viewed as prohibitory, because, by its terms, it restrains the NCAA from acting affirmatively to interfere with Fairfield's decision to award plaintiff a scholarship and to allow him to play basketball. Put differently, by prohibiting the NCAA from further interfering with Phillip's ability to receive aid and play basketball, the injunction permitted Fairfield and Phillip to continue the relationship to which they had agreed--that between student-athlete and university. We add that as a practical matter, the district court's order preserved the status quo in another basic sense: only with the aid of the court's order could Phillip receive the financial aid that enabled him to continue as a student at Fairfield. Phillip's status as a college student at Fairfield was thus preserved by the injunction.
 
 
 7
 The alternative question of whether a heightened standard should apply because the injunction provides Phillip with substantially all the relief he seeks and the relief cannot be undone even if the NCAA prevails at trial on the merits is a closer one. On the one hand, common sense suggests that by obtaining the scholarship necessary to attend school and then, by performing well during his first year, Phillip may well have been able to overcome whatever NCAA-disqualifying deficiencies may have been caused by his high school record. That is, one might expect that the NCAA would have little interest in enforcing a penalty against a student on the basis of the student's failure to comply with its high school curriculum requirements when the student, pursuant to a legitimately obtained court order, attends one year of college and performs satisfactorily while there. Were this scenario accurate, Phillip, by obtaining the right to receive his scholarship, would obtain the opportunity to succeed during his first year at Fairfield, thereby (depending on his performance) obtaining all the relief he seeks--relief which is, at bottom, the right to be free from further NCAA interference on account of his high school curriculum. Equally, to the extent that the NCAA would be unable to "take back" the year Phillip played college basketball, its remedy--should it prevail at trial--would be less than meaningful. On the other hand, however, is the fact that both parties represented vigorously at oral argument that the consequences of the injunction would endure well after Phillip's freshman year in college. For example, the NCAA explained that under its current rules, if the injunction is dissolved, Phillip may again become ineligible to receive aid or play basketball--regardless of the calibre of his academic performance during his first year at school.
 
 
 8
 Based on these representations, we conclude that by obtaining the injunction, Phillip has not obtained all of the relief he seeks because he (and Fairfield) may still be subject to various NCAA penalties. We thus find that the district court was correct in deciding that Phillip need only establish irreparable harm absent the injunction and either likely success on the merits or at least a sufficiently serious question going to the merits plus a balance of hardships weighing decidedly in his favor. With this standard in mind, we turn to the task of determining whether the district court abused its discretion in assessing the merits of plaintiff's claim.[1]
 
 
 9
 Although plaintiff's complaint contains numerous claims, we construe the district court's order granting the injunction to rest on only one of them: plaintiff's breach of contract claim, which is governed by Connecticut law.[2] In finding that plaintiff's complaint had "substantial merit," the district court construed the gravamen of plaintiff's claim to be thatthe NCAA has a legal duty to this plaintiff to treat him fairly and in good faith, and that it has breached that duty by failing to extend to him a waiver in circumstances where waiver would be called for by its policy and practice. To me, that is a good claim that states a cause of action and one that seems to me to have a probability of success.
 
 
 10
 In further defining the alleged breach, the district court added:
 
 
 11
 The point I want to emphasize is that on this record it appears to me that the NCAA has a policy and practice of bending over backwards to find a way to grant a waiver to people; yet, contrary to that policy, contrary to that practice, the NCAA has refused to grant a waiver to this person.
 
 
 12
 I believe that its refusal to grant a waiver was arbitrary and capricious. Waivers have been granted to similarly-situated people more than once, consistent with the policy and the practice described in this record. Refusing to grant a waiver in this case undermines the purpose of the eligibility rules. It does not serve them.
 
 
 13
 The district court thus appears to have determined that by arbitrarily refusing to grant Phillip a waiver, particularly when it had granted waivers in similar cases, the NCAA breached the duty of fair dealing that Connecticut law implies in every contract.
 
 
 14
 The district court purported to find without adequate explanation that some sort of a contractual duty was owed by the NCAA to Phillip as a result of the contracts between Fairfield and the NCAA and Phillip and the NCAA. We express no view of whether such a duty did exist. However, we think it clear that the district court erred in finding that the NCAA evidenced bad faith simply by acting arbitrarily. Connecticut law requires more. As the Connecticut Supreme Court recently has reiterated, "[b]ad faith means more than mere negligence; it involves a dishonest purpose." Gupta v. New Britain Gen. Hosp., 239 Conn. 574, 687 A.2d 111, 122 (1996) (quoting Habetz v. Condon, 224 Conn. 231, 618 A.2d 501, 504 (1992)). Or, as has also been said, "[n]eglect or refusal to fulfill a contractual obligation can be bad faith only if prompted by an interested or sinister motive." Feinberg v. Berglewicz, 32 Conn.App. 857, 632 A.2d 709, 711 (1993). The district judge, however, seemed to be of the view that arbitrary enforcement of one's own rules alone could establish the likely merit of a breach of contract claim. Indeed, the district court opined that "if it can be shown that the [waiver] rule has been violated for no good reason in this case, then I see no reason why this plaintiff should not get relief."
 
 
 15
 Because the district court failed to apply principles of good faith and fair dealing as defined by Connecticut contract law, and, because of this omission, also failed to make any factual findings of bad intent, we are unable to affirm the district court's order. See County of Seneca v. Cheney, 12 F.3d 8, 11 (2d Cir.1993) ("An injunction based on an error of law automatically qualifies as an abuse of discretion."). Accordingly, we must remand. In so doing, we leave the injunction intact. See Rosen v. Siegel, 106 F.3d 28, 33 (2d Cir.1997); Able v. United States, 44 F.3d 128, 132 (2d Cir.1995). However, as the district court has not yet made a "likelihood of success" finding using the correct rule of Connecticut law, we do not believe the injunction should remain in place for any longer than necessary. See Able, 44 F.3d at 132. We therefore remand and condition the temporary maintenance of the injunction upon the commencement of a trial on the merits within four months. See id. at 133; see also Fed.R.Civ.P. 65(a)(2). On remand, the district court should specify precisely which of plaintiff's claims it has considered and finds (or does not find) to have likely merit.
 
 CONCLUSION
 
 16
 For the reasons stated, we remand this case to the district court for proceedings consistent with this opinion.
 
 
 
 [1]
 The NCAA does not dispute the district court's finding of irreparable harm
 
 
 [2]
 We note that Phillip's amended complaint denominates "Arbitrary and Capricious Action" as his fourth cause of action, although he cites no federal or Connecticut statute or common law authority in support of this claim, nor are we aware of any. We have therefore assumed that the district court did not base its finding on this claim, but rather, on the state law claim for breach of the duty of good faith
 We add in this context that we find less than helpful the broader question debated by the parties of whether it is generally "appropriate"--without reference to any particular law--to examine the decision-making of private voluntary associations. Phillip, like any plaintiff, must state a viable cause of action derived from particular authority, be that state or federal law. At least until the district court rules on plaintiff's other claims, this authority is Connecticut contract law, and, accordingly, Phillip must satisfy each element required under such law. If Connecticut law permits contract claims against so-called "private" institutions, the allegedly private character of the NCAA will not bar plaintiff's claim.