**D. Philip VEITCH, Plaintiff,**

v.

**Richard J. DANZIG, Secretary of the Navy, et al., Defendants.**

**No. Civ.A. 00–2982 TPJ.**

United States District Court,
District of Columbia.

Feb. 27, 2001.

Arthur A. Schulcz, Sr., Vienna, VA, for D. Philip Veitch, plaintiff.

Youngjae Lee, U.S. Department of Justice, Washington, DC, for Richard J. Danzig, Norbert R. Ryan, Barry Black, Ronald Buchmiller, United States Navy, defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiff D. Philip Veitch, a former U.S. Navy chaplain who served on active duty from June, 1987, until his separation from service in September, 2000, with the rank of lieutenant commander, sues to be reinstated and restored to active duty. He alleges that his separation, although granted upon his own application to resign his commission, was in the circumstances involuntary, having been induced by unconstitutional demands of his command chaplain and others.

The case is presently before the Court upon plaintiff's motion for a preliminary injunction that would order his immediate reinstatement *pendente lite.* The Navy opposes.

## I.

Briefly stated, Rev. Veitch asserts that he is an ordained minister of the Reformed Episcopal Church, a theologically conservative, evangelical denomination. His confrontation with the Chaplain Corps hierarchy began in 1997 when he was stationed at the Norfolk Naval Base. He filed a religious discrimination complaint against his command chaplain alleging that he had been improperly excluded from preaching

in the General Protestant service aboard the U.S.S. Enterprise, homeported in Norfolk. Veitch's complaint was resolved against him, and he was transferred to the U.S. Naval Support Activity ("NSA") in Naples, Italy, reporting for duty to a new command chaplain in mid-December, 1997.

In Naples, plaintiff's command chaplain was Captain Ronald Buchmiller, a Roman Catholic. According to Veitch, Buchmiller and an Episcopal chaplain conspired to create an atmosphere of religious intolerance directed toward conservative and evangelical Protestants· in Naples, including plaintiff, suggesting that he should preach "religious pluralism" and refrain in his sermons from disparaging other religions. Plaintiff filed a second EEOC complaint in November 1998, which was again dismissed.

The acrimony between Veitch and Capt. Buchmiller escalated, culminating in the spring of 1999 in a disciplinary charge against Veitch preferred by the commanding officer, NSA, Naples, under Article 89 of the Uniform Code of Military Justice, for disrespect of his superior officer, Capt. Buchmiller. At first Rev. Veitch elected to stand trial by court-martial in lieu of nonjudicial proceedings at "captain's mast," but in late March, 1999, acting upon advice of his JAG counsel, Veitch tendered his resignation of his commission in advance of trial. Two weeks later he requested the Department of Defense Inspector General to conduct an investigation of the circumstances of his resignation, arguing that it was coerced and that Capt. Buchmiller had created a culture of religious oppression against plaintiff and other evangelical groups in Naples. In May, 1999, the Inspector General accepted the complaint for investigation.

Upon a change of command at NSA, Naples, Veitch sought unsuccessfully to rescind his resignation, but his original separation date of November 30, 1999, was postponed, allegedly at the request of a U.S. Senator, pending completion of the Inspector General's investigation. The Department of Defense assigned the investigation to the Navy Inspector General, who concluded his investigation on May 23, 2000. The lengthy Inspector General's Report ("IG Report") concluded that plaintiff's "disciplinary problems ... resulted from his own misconduct" and that the allegations of reprisal were unsubstantiated. IG Report at 37.

On September 30, 2000, plaintiff was separated from the Navy. He filed his complaint and the instant motion for a preliminary injunction in this Court on December 13, 2000.

## II.

Plaintiff's complaint charges: (1) violation of the First Amendment's Free Exercise and Establishment clauses (based on Buchmiller's actions toward plaintiff); (2) violation of· plaintiff's First Amendment free speech rights and right to seek redress (the Navy's insistence that he preach "pluralism among religions," and the Navy's retaliation for his complaining about religious discrimination); (3) violation of the Equal Protection Clause under the Fifth Amendment (inconsistent application of the Uniform Code of Military Justice); (4) illegal or constructive discharge (hostile working conditions); (5) violation of the Religious Freedom Restoration Act ("RFRA") (censoring what plaintiff could preach); (6) irreparable harm (his precipitous separation from the Navy); (7) violation of plaintiff's civil rights (withholding back pay);[1] and (8) conspiracy to violate plaintiff's civil rights.

---

1. Plaintiff initially sought a writ of mandamus    for back pay owing him. He withdrew the

■ To prevail on a motion for a preliminary injunction in this Circuit, plaintiff must show: "(1) a substantial likelihood of success on the merits; (2) irreparable harm or injury absent an injunction; (3) less harm or injury to the other parties involved; and (4) the service of the public interest." *McVeigh v. Cohen*, 983 F.Supp. 215, 218 (D.D.C.1998) (citing *Dendy v. Washington Hosp. Center*, 581 F.2d 990, 992 (D.C.Cir.1978) and *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977)); *see also Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1505–6 (D.C.Cir., 1995).

■ At the outset, the Court observes that plaintiff seeks a mandatory injunctive intervention. He asks this Court to require defendant to take affirmative steps to reverse his separation and restore him to active duty five months after his separation was finalized. Such a ruling would alter, not preserve, the *status quo*. Accordingly, he must meet a higher standard than were the injunction he sought merely prohibitory.[2]

■ If, as plaintiff contends, this controversy is centered upon a religious orthodoxy mandated by the Navy—even one officially sanctioned as appropriate for a military population of diverse religious beliefs—plaintiff's First Amendment claims are by no means insubstantial. Plaintiff argues that the Navy, in effect, drove him from his pulpit for failure to preach "pluralism among religions" and / or "inclusiveness." The Establishment Clause clearly forbids that there should be any official judgments about the correctness of religious beliefs. *See United Christian Scientists v. First Church of Christ, Scientist*, 829 F.2d 1152, 1167 (D.C.Cir.1987). To the same effect, the RFRA, 42 U.S.C. § 2000bb–1(a), (b), provides that "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" except "if it demonstrates that the application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."[3]

Plaintiff also invokes his right to free speech under the First Amendment, and cites to the numerous decisions since *Pickering v. Board of Educ. of Township High Sch. Dist. 205, Will County, Illinois*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811

petition after the Navy made payment.

**2.** The Supreme Court has held that "[t]he purpose of a preliminary injunction is merely to preserve the relative position of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). Courts have held that "where an injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act, . . .—the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from a denial of the injunction." *Phillip v. Fairfield University*, 118 F.3d 131, 133 (2d Cir.1997); *see also Dorfmann v. Boozer*, 414 F.2d 1168, 1173

(D.C.Cir.1969) ("The power to issue a preliminary injunction, especially a mandatory one, should be 'sparingly exercised.' ").

**3.** In *Rigdon v. Perry*, 962 F.Supp. 150 (D.D.C. 1997), another judge of this district court found that the military violated the Religious Freedom Restoration Act when it forbade chaplains from encouraging their parishioners to write Congress about pending abortion legislation. In *Rigdon*, Judge Stanley Sporkin noted that "the compelling interests advanced by the military are outweighed by the military chaplains' right to autonomy in determining the religious content of their sermons especially because tile defendants have failed to show how the speech restrictions as applied to chaplains advances these interests." *Id.* at 162.

(1968), which circumscribe the extent to which government may inhibit the freedom of expression of those whom it employs. As the Supreme Court observed recently, "[t]hese precedents have long since rejected Justice Holmes' famous dictum [in *McAuliffe v. Mayor of New Bedford,* 155 Mass. 216, 220, 29 N.E. 517 (1892) ] that a policeman 'may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.' " *Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr,* 518 U.S. 668, 674, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996).

■ The problem for plaintiff here, however, insofar as establishing the likelihood of his success on the merits of this case, is that the dispute appears more to be centered upon his military deportment than upon his religious convictions. The charge brought against him was disrespect for a superior officer, not heresy. Had the disrespect consisted of nothing more than a contest of divine doctrine with Capt. Buchmiller, Lt. Cmdr. Veitch's constitutional rights may well have sufficed as defenses to the UCMJ charge, whether at captain's mast or court-martial. He elected, however, to resign rather than face trial. *See Brown v. United States,* 30 Fed. Cl. 227, 230 (Fed.Cl.1993) ("[P]laintiff does not establish that the circumstances left him no reasonable alternative to resignation. He could have chosen to appear before a court martial and face the impending charges against him."). The presumption that his resignation was voluntary "is not rebutted if the plaintiff has had to choose between two unattractive alternatives." *McIntyre v. United States,* 30 Fed.Cl. 207, 211 (Fed.Cl.1993).[4]

Further diminishing the prospects of plaintiff's likelihood of success on the mer-

its of the case is the Report of Investigation by the Naval Inspector General to the Inspector General, Department of Defense, of April, 2000, documenting an investigation commenced more than five months earlier at Veitch's instance. The Report concludes that Veitch's complaints of religious persecution, censorship, and reprisal were unfounded, and that the disciplinary, proceedings against him at the time of his resignation were the product of his own military—not theological—misconduct.

In summary, considered in light of federal courts' historic reluctance "to intrude upon the authority of the Executive in military and national security affairs," the plaintiff has not demonstrated to this Court that he has a *substantial* likelihood of success on the merits of his claims. *Department of Navy v. Egan,* 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988).

■ Plaintiff also fails to convince the Court that he will suffer irreparable harm if his motion for a preliminary injunction is denied. His claims of irreparable harm are predominantly those of loss of salary and benefits, as well as damage to his professional reputation. The types of injuries the plaintiff contends he and his family will suffer are, however, no more than are typical in instances of the termination of any government employee, which the Supreme Court found insufficient to show irreparable injury for purposes of *pendente lite* relief in *Sampson v. Murray,* 415 U.S. 61, 91–92, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). *Sampson* addressed the quantum of prejudgment harm that a civilian probationary government employee must show as resulting from her discharge, stat-

---

4. Plaintiff's argument that his attempt to withdraw his resignation indicated it was not voluntary is also unconvincing. Only after

the Navy decided not to pursue the court-martial did plaintiff seek to withdraw his resignation.

ing that "the respondent at the very least must make a showing of irreparable injury sufficient in kind and degree to override [those] factors cutting against the general availability of preliminary injunctions in Government personnel cases." *Id.* at 84, 94 S.Ct. 937. The Supreme Court noted that there might be some circumstances in which a discharge of a governmental employee could meet the irreparable injury test, but in *Sampson,* even a showing of loss of income and damage to reputation fell "far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case." *Id.* at 91–92, 94 S.Ct. 937.

> [A]n insufficiency of savings or difficulties in immediately obtaining other employment-external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself-will not support a finding of irreparable injury, however severely they may affect a particular individual.

*Id.* at 92, n. 68, 94 S.Ct. 937.

Lower courts have since extended this rationale to permanent members of the armed forces. *See e.g., Hartikka v. United States,* 754 F.2d 1516, 1518 (9th Cir. 1985) (finding air force captain's claim of irreparable harm resulting from loss of income and benefits and damage to his reputation of less than honorable discharge insufficient to justify injunctive relief under *Sampson* standard); *Guerra v. Scruggs,* 942 F.2d 270, 274 (4th Cir.1991) ("We believe that *Sampson*'s higher requirement of irreparable injury should be applied in the military context given the federal courts' traditional reluctance to interfere with military matters."); *Chilcott v. Orr,* 747 F.2d 29, 32 (1st Cir.1984) ("In view of the strong judicial policy against interfering with the internal affairs of the armed forces, we will apply the more stringent test of *Sampson* to applications for preliminary injunctions by military personnel."). Although this Circuit has not expressly addressed the issue of whether a heightened preliminary injunction standard applies to cases involving military personnel, it has adhered to the principle of non-interference with federal personnel practices generally, citing *Sampson. See Andrade v. Lauer,* 729 F.2d 1475, 1483 (D.C.Cir.1984).

■■ Plaintiff's argument that a violation of a constitutional right is itself an irreparable harm is similarly unavailing in his case. In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court affirmed the issuance of a preliminary injunction, finding that the loss of First Amendment freedoms constituted irreparable harm in a case in which the "injury was both threatened and occurring" at the time of plaintiffs' motion, and the plaintiffs had, moreover, sufficiently demonstrated a probability of success on the merits. *Id.* at 374, 96 S.Ct. 2673. The Supreme Court acknowledged that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 373, 96 S.Ct. 2673. But as this Circuit explained in *Wagner v. Taylor,* 836 F.2d 566 (D.C.Cir.1987), "[t]he Supreme Court has instructed that injunctive relief is not appropriate unless the party seeking it can demonstrate that 'First Amendment interests [are] either threatened or in fact being impaired at the time relief [is] sought.'" *Id.* at 576 n. 68 (quoting *Elrod,* 427 U.S. at 373–374, 96 S.Ct. 2673). The loss of First Amendment freedoms in this case took place, if at all, approximately two years ago. A preliminary injunction will not remedy any impending harm to plaintiff's First Amendment interests today for there is none. Now out of uniform, plain-

tiff can preach as he chooses, unconstrained by military discipline or protocol.

This Court concludes that plaintiff has failed to show that irreparable harm will result from denial of his motion for a preliminary injunction.

For the reasons set forth above, this Court concludes that plaintiff has failed to satisfy at least two of the elements necessary to a meritorious application for a preliminary injunction. Accordingly, it is, this 27th day of February, 2001,

ORDERED, that plaintiff's motion for a preliminary injunction is denied; and it is

FURTHER ORDERED, that the parties appear for an initial status conference before this Court on March 20, 2001 at 9:30 a.m.