**Lieutenant Colonel Jane ABLE, Petty Officer Robert Heigl, First Lieutenant Kenneth Osborn, Sergeant Steven Spencer, Lieutenant Richard Von Wohld, and Seaman Werner Zehr, Plaintiffs–Appellees,**

v.

**UNITED STATES of America and William J. Perry, In His Official Capacity as Secretary of Defense, Defendants–Appellants.**

No. 965, Docket 94–6181.

United States Court of Appeals, Second Circuit.

Argued Dec. 12, 1994.

Decided Jan. 3, 1995.

Michael Lacovara, David H. Braff, Penny Shane, Sullivan and Cromwell, William B. Rubenstein, Ruth E. Harlow, Marc E. Elovitz, American Civ. Liberties Union Foundation, Beatrice Dohrn, Evan Wolfson, Lambda Legal Defense & Educ. Fund, New York City, for plaintiffs-appellees.

Mark I. Levy, Civ. Div., Frank W. Hunger, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, DC, Zachary W. Carter, U.S. Atty., Brooklyn, NY, Anthony J. Steinmeyer, John C. Hoyle, E. Roy Hawkens, Edward Himmelfarb, Civ. Div., U.S. Dept. of Justice, Washington, DC (Ltc. Nolon J. Benson, Jr., Cpt. Tara O. Hawk, of counsel), for defendants-appellants.

Before: FEINBERG, VAN GRAAFEILAND, and WALKER, Circuit Judges.

PER CURIAM:

## BACKGROUND

Plaintiffs, six gay or lesbian members of the armed forces, filed suit in the Eastern District of New York (Eugene H. Nickerson, *Judge*) challenging the constitutionality of the recently enacted federal law and implementing regulations governing military service by homosexuals. The law, embodying the new "Don't Ask, Don't Tell" policy, mandates separation of any service member who states that he or she is homosexual unless that person can show "that he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts." 10 U.S.C. § 654(b)(2). Plaintiffs contend that the law and its accompanying regulations violate the Equal Protection Clause of the Fourteenth Amendment, applicable against the United States under the Due Process Clause of the Fifth Amendment, and the First Amendment of the Constitution.

After commencement of the suit, the Department of Defense initiated an investigation of plaintiff Petty Officer Heigl based on his statement that he was a homosexual that was submitted to the district court in connection with this lawsuit. In response to this investigation, the district court issued an order on April 4, 1994 enjoining defendants "from investigating or discharging or taking other adverse or punitive action against plaintiffs based on their self-identification as gay or lesbian in connection with [these] legal proceedings." 847 F.Supp. 1038. Defendants moved for an order vacating, altering, or amending the preliminary injunction, but the district court denied their request.

Shortly thereafter, defendants informed plaintiffs that they planned to initiate discharge proceedings against two other plaintiffs, Sergeant Spencer and Seaman Zehr, based on their statements outside of the suit identifying themselves as homosexuals. Plaintiffs therefore sought a second injunction prohibiting defendants from taking any such adverse action against any of the plaintiffs while the litigation was pending. On June 3, 1994, the district court issued a second order enjoining defendants "from investigating, discharging or taking other adverse or punitive action, pursuant to the Act and/or Regulations, against plaintiffs based on their self-identification as lesbian or gay." Defendants appealed the two orders pursuant to 28 U.S.C. § 1292(a)(1).

## DISCUSSION

■ The principal issue in this appeal is whether the district court utilized the proper standard in deciding to issue the two preliminary injunctions. Defendants contend that the district court erred in requiring plaintiffs to demonstrate only "serious questions going to the merits" rather than a likelihood of success on the merits. Because we agree that the district court applied an improper standard in issuing the injunctions, we remand to the district court.

■ The general standard for issuing a preliminary injunction is well settled. "The party seeking the injunction must demonstrate (1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir.1991). This

second "serious questions" prong is also frequently termed the "fair ground for litigation" standard. *See, e.g., Sperry Int'l Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982). Although a plaintiff who demonstrates irreparable harm may usually satisfy either (a) or (b), this choice is not always available.

> [W]here the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim.

*Plaza Health Laboratories, Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989). This exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.

■ We believe that the investigations and discharge proceedings that the plaintiffs seek to enjoin fall squarely within the confines of this exception. They plainly qualify as action taken "pursuant to a statutory or regulatory scheme." Separation due to the likelihood of a service member's homosexual conduct is mandated by 10 U.S.C. § 654(b); the procedures and standards for determining whether a service member will be separated are prescribed in Department of Defense Directive Nos. 1332.14 and 1332.30. That the narrow injunctions crafted by the district court "merely freeze[ ] the positions of the parties until the court can hear the case on the merits" rather than enjoining an entire statute or regulation, *Heckler v. Lopez,* 463 U.S. 1328, 1333, 104 S.Ct. 10, 13–14, 77 L.Ed.2d 1431 (1983) (Rehnquist, *Circuit Justice* ), *application to vacate stay denied,* 464 U.S. 879, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983), does not alter this conclusion. As long as the action to be enjoined is taken pursuant to a statutory or regulatory scheme, even government action with respect to one litigant requires application of the "likelihood of suc-

cess" standard. *See Plaza Health,* 878 F.2d at 578 (applying the higher standard to an injunction prohibiting the government from suspending one plaintiff from Medicaid participation).

Plaintiffs contend that the "likelihood of success" prong is not required in this case because the Department of Defense's actions are not "taken in the public interest." Their principal support comes from *Haitian Centers Council, Inc. v. McNary,* 969 F.2d 1326 (2d Cir.1992), *vacated as moot,* —— U.S. ——, 113 S.Ct. 3028, 125 L.Ed.2d 716 (1993), in which we held that plaintiffs wishing to enjoin the government from repatriating Haitian refugees need only meet the "serious questions" standard. *Id.* at 1338–39. We noted that "the 'likelihood of success' prong need not always be followed merely because a movant seeks to enjoin government action." *Id.* at 1339. Similarly, in *Carey v. Klutznick,* 637 F.2d 834, 839 (2d Cir.1980), we applied the less rigorous standard to an injunction aimed at the Census Bureau's survey methods, noting that a government agency may not lay sole claim to the public interest. *Id.* at 839. Plaintiffs argue that in this case they present an equal claim to the public interest and therefore need not meet the higher standard.

We believe that in a case such as this, where the full play of the democratic process involving both the legislative and executive branches has produced a policy in the name of the public interest embodied in a statute and implementing regulations, our role in reviewing that determination for the purpose of deciding whether to apply the "serious questions" or "likelihood of success" standard is severely limited. Unlike in *Haitian Centers,* in which the plaintiffs challenged action taken pursuant to INS policy formulated solely by the executive branch, and *Carey,* which involved methods adopted by the Census Bureau altogether outside of a regulatory framework, in this case Congress and the President engaged in lengthy public debate before formulating the new "Don't Ask, Don't Tell" policy and enacting and signing the legislation implementing it. *See Haitian Centers,* 969 F.2d at 1339 (distinguishing cases in which the "likelihood of success"

requirement applied as involving action authorized by a specific statute). The statute contained fifteen specific findings which Congress believed to justify the new policy. 10 U.S.C. § 654(a). In such circumstances, it is inappropriate for this court to substitute its own determination of the public interest for that arrived at by the political branches, whether or not there may be doubt regarding the wisdom of their conclusion. We therefore hold that the more rigorous "likelihood of success" standard applies to the injunctions sought in this case.

 Rather than applying the "likelihood of success" standard ourselves, however, we believe that the wiser course is to remand to allow the district court to make the determination in the first instance. *See* 28 U.S.C. § 2106; *see also* 11 Wright & Miller, Federal Practice and Procedure: Civil § 2962, at 638 ("In general, when the appellate court determines that the trial court's order denying injunctive relief was erroneous, it will reverse and remand the case for further proceedings below."). Remand is appropriate where consideration of additional evidence would enhance the district court's determination. *See Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201 (2d Cir.1972) (remanding for determination of the appropriateness of a preliminary injunction where several factual and legal issues require exploration), *stay granted*, 411 U.S. 902, 93 S.Ct. 1529, 36 L.Ed.2d 193 (1973), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1893, 1902, 36 L.Ed.2d 390 (1973). Such consideration, while not expected to be extensive, is nonetheless needed here. For example, the government alleged for the first time in its reply brief on appeal that several service members have identified themselves as homosexual and been subjected to discharge proceedings in which they were able to rebut the presumption of homosexual conduct and avoid being discharged. This claim, and perhaps others, warrant further exploration by the district court before a decision touching on the merits is made.

 We believe that, given circumstances of this case, the preliminary injunction should remain in place pending resolution of the issue of the likelihood of success on remand lest plaintiffs lose altogether the opportunity to litigate their facial constitutional challenges in the case's present posture. We followed a similar course in *Packard Instrument Co. v. ANS, Inc.*, 416 F.2d 943 (2d Cir.1969), where, after deciding that the district court had misjudged the possibility of success in granting a preliminary injunction in a patent infringement case, we stated that "given the present posture of this case, ... the interests of the parties and the efficient administration of justice will be best served by permitting the preliminary injunction to stand...." *Id.* at 945.

However, the injunctions should not remain in place for an extended period with the case in its present posture since no "likelihood of success" finding has been made. Fortunately, Federal Rule of Civil Procedure 65(a)(2), which allows consolidation of a preliminary injunction hearing with a trial on the merits of a permanent injunction, provides a means of ensuring prompt consideration of the full merits of plaintiffs' claims rather than the "likelihood" of their success. In *Packard Instrument*, we conditioned the continued effect of the injunctions on such a consolidation. *Packard Instrument*, 416 F.2d 945. We will issue such an order here as well. *Cf. Forts v. Ward*, 566 F.2d 849, 854 (2d Cir.1977) (suggesting consolidation under Fed.R.Civ.P. 65(a)(2) where the district court failed to hold an evidentiary hearing before granting a preliminary injunction that barred male corrections officers from female prison wards); *SEC v. Spectrum, Ltd.*, 489 F.2d 535, 543 (2d Cir.1973) ("strongly urg[ing]" consolidation where undue delay seemed likely); *Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.*, 443 F.2d 867, 884 (2d Cir. 1971) (urging consolidation and conditioning the decision to vacate a preliminary injunction on the defendant's offer to proceed quickly to trial).

We believe that upon consolidation under Rule 65(a)(2), the district court could decide the merits of plaintiffs' claims within a relatively short period of time. While we have noted that there are some factual issues remaining to be explored, we also note that the factual record in this case, in which legal issues predominate, is largely complete. In addition, we think that the important ques-

tions raised in this case should not be left unanswered by the courts any longer than necessary. We will therefore condition the temporary maintenance of the injunction upon the occurrence of a trial on the merits within three months.

Accordingly, it is hereby ordered that this case be remanded to the district court. The preliminary injunction orders shall remain in effect until March 31, 1995 upon which date they shall expire unless reentered by the district court following a trial on the merits of plaintiffs' request for a permanent injunction pursuant to Federal Rule of Civil Procedure 65(a)(2).