**CROWN STREET ENTERPRISES, INC., et al., Plaintiffs,**

v.

**CITY OF NEW HAVEN, et al., Defendants.**

Civ. No. 3:96cv2575 (JBA).

United States District Court, D. Connecticut.

June 9, 1997.

Richard R. Brown, Robert T. Rimmer, Brown, Paindiris & Zarella, Hartford, CT, for Plaintiffs.

Martin S. Echter, Deputy Corp. Counsel, Office of Corporation Counsel, City of New Haven, New Haven, CT, for Defendants.

*Ruling on Plaintiffs' Second Application for Preliminary Injunction (Doc. 21)*

ARTERTON, District Judge.

Plaintiffs, who wish to open a bar in New Haven featuring topless dancing, challenge various ordinances that regulate the location and operation of adult entertainment establishments in the city. On January 30, 1997, the Court granted plaintiffs' motion for a preliminary injunction restraining the city from enforcing its "live entertainment ordinance," § 6–4 of the New Haven Code, but denied plaintiffs' motion for a preliminary injunction restraining enforcement of the city's recent "adult business ordinance," which amends various provisions of the city's zoning laws and health and sanitation code.

Subsequent to the Court's ruling, and pursuant to the terms of the adult business ordinance, plaintiffs sought a "special exception" for their proposed business venture from the New Haven Board of Zoning Appeals ("BZA"). The BZA denied plaintiffs' request on April 1, 1997. Plaintiffs have since appealed the BZA's decision to Connecticut Superior Court ("the state court action"), which action is apparently still pending. (*See* Doc. 39.)

On February 14, 1997, plaintiffs filed a second motion in this Court to preliminarily enjoin enforcement of the adult business ordinance. Unlike the first motion, the present motion raises a facial challenge to the ordinance under the First Amendment to the United States Constitution. A similar challenge has been raised in the state court action, along with a variety of other challenges under state law and the state constitution. In particular, in the present motion, plaintiffs contend that the adult business ordinance does not provide the procedural safeguards required of prior restraints on speech under the First Amendment. However, for the reasons set forth below, the Court finds the adult business ordinance to be a content-neutral time, place, and manner regulation that need not provide the safeguards sought by the plaintiffs. Accordingly, plaintiffs' Motion for Preliminary Injunction is DENIED.

*Standard for Preliminary Injunction*

The parties are not in dispute as to the standard governing this motion for preliminary injunction. Because plaintiffs "seek[] to stay government action taken in the public interest pursuant to a statutory or regulatory scheme," plaintiffs must establish both "irreparable injury [and] a likelihood that [they] will succeed on the merits of [their] claim." *See Able v. United States,* 44 F.3d 128, 130 (2d Cir.1995).

*The Adult Business Ordinance*

On October 21, 1996, New Haven's Board of Aldermen enacted an adult business ordinance regulating the location and operation of a broad range of adult establishments, including adult bookstores, adult theaters, adult cabarets, massage parlours, rap parlours, and saunas. (Defs.' Ex. 2.) In the present motion, plaintiffs challenge only the regulation of "adult cabarets" under the ordinance, although defendants contend that the separate regulations governing "adult theaters" and "adult entertainment centers" must also be considered in order to understand the nature of the adult cabaret provisions.

Under the adult business ordinance, "adult cabaret" is defined as "an establishment that regularly features topless dancers, go-go dancers, exotic dancers, nude dancers, male or female impersonators, or similar entertainers." Zoning Ordinance of the City of New Haven, § 1. Although not expressly stated in the ordinance, defendants contend that the definition of "adult cabaret" is further limited to establishments that provide food or beverages in addition to the aforementioned entertainment. Plaintiffs do not dispute this interpretation of the ordinance, which is further supported by the fact that the city's amended Use Table sets forth zoning restrictions on "adult cabarets" under the heading of "Eating, Drinking Places & Entertainment," while all other "adult businesses" are placed under the separate heading of "Amusements." The parties are in agreement that the plaintiffs' proposed business venture falls within the meaning of "adult cabaret" under the ordinance.

Adult cabarets are subject to a variety of location restrictions, such as being prohibited from operation within 1500 feet of another adult cabaret, which are not challenged in the present motion. Adult cabarets are further prohibited categorically in certain zones of the city, but are permitted to operate in other zones if a special exception is obtained from the BZA. The procedures and standards governing an application for a special exception are the sole subject of the present motion. Specifically, plaintiffs challenge the applicable standards as vague and contend that the special exception scheme lacks sufficiently prompt judicial review of denials.[1]

The ordinance provides additional regulations governing "adult businesses." Within this category, an "adult theater" is an establishment "presenting programs, material distinguished or characterized by an emphasis on matters depicting, describing or relating to nudity, sexual conduct, sexual excitement or sadomasochistic abuse." Defendants argue, and plaintiffs do not dispute, that the definition of adult theater encompasses the exotic dancing-type activities associated with the category of "adult cabaret." Put differently, "adult cabaret" is merely a subcategory of "adult theater," distinguished by the particular type of entertainment provided and by the fact that food and beverages may be served.[2] Plaintiffs offer no contrary interpretation of the ordinance.

The regulation of adult cabarets and other types of adult theaters appears to differ in only one respect. While, as noted above, adult cabarets are prohibited from operating anywhere in New Haven without a special exception, adult theaters are permitted to operate "as of right" under the adult business ordinance in zoning areas BD, BD–1, BE, IL, and IH. Thus, the special exception permitting scheme that is the subject of the present motion does not apply to live adult entertainment generally, but only to certain categories of such entertainment (i.e., exotic dancing and similar performances) and, even then, only when the entertainment is provided by a dining or drinking establishment.

### Discussion

■ The Supreme Court has identified "two evils that will not be tolerated" in a licensing scheme that imposes prior restraints on expressive activity protected by the First Amendment. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225, 110 S.Ct. 596, 604, 107 L.Ed.2d 603 (1990) (O'Connor, J.). First, a licensing scheme may not place "unbridled discretion in the hands of a government official or agency." *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988). Second, "a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *FW/PBS*, 493 U.S. at 226, 110 S.Ct. at 605 (O'Connor, J.); *see also Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). As noted above, plaintiffs contend that the standards and procedures under which they must attempt to procure a special exception violate both

---

1. The parties do not appear to be in agreement as to what standards govern review of an application for a "special exceptions" for an adult cabaret. Plaintiffs contend that the relevant standards are supplied by § 63.D of the New Haven Zoning Ordinance, which is a general provision concerning special exceptions to city zoning requirements. Defendants contend that the relevant standards are set forth in new § 42.3.E, which is part of the adult business ordinance and which sets forth standards for review of a "special exception" application under the ordinance.

The parties may also have different views as to the time within which judicial review of BZA decisions must be completed under state law. However, because the Court does not find the prior restraint safeguards to be applicable to the special exception scheme at issue, the Court need not resolve these disputed matters of state and municipal law.

2. Defendants further contend, and plaintiffs do not dispute, that exotic dancing may take place in an "adult entertainment center," which is an establishment "which contains one or more coin-operated or electronically controlled means which when activated permit a customer to view a live person unclothed or in such attire, costume or clothing as to expose to view any portion of the female breast below the top of the areola, or any portion of the public hair, anus, cleft of the buttocks, vulva or genitals, or the charging of any admission or fee for the viewing of such activity." Thus, an adult cabaret with this particular type of viewing mechanism may be an adult entertainment center in addition to, or rather than, an adult theater.

prongs of the licensing scheme safeguards. Defendants argue, however, that the adult business ordinance is not constitutionally required to have these safeguards. Because plaintiffs' claims pertain exclusively to the alleged absence of the licensing scheme safeguards, plaintiffs must first show that the safeguards are in fact applicable in order to demonstrate a likelihood of success on the merits.

The Second Circuit has made clear that the licensing scheme safeguards are not applicable in every case in which government permission must be sought prior to engaging in an expressive activity. In *Marty's Adult World v. Town of Enfield,* 20 F.3d 512 (2d Cir.1994), the Second Circuit considered the constitutionality of an ordinance that required retail businesses to obtain a special use permit prior to conducting a commercial recreation use. The plaintiffs, who wished to operate video booths displaying sexually explicit films, argued that the defendant town's permitting procedures for commercial recreational uses failed to supply the procedural safeguards required under *Freedman.* However, because the plaintiff could operate elsewhere in the same town, specifically in a "Business Regional District," without obtaining a special use permit, the Second Circuit concluded that the permitting requirements were not a licensing scheme, but a "time, place, and manner regulation." *Id.* at 515. The Court further found this distinction to be dispositive as to the necessity of any procedural safeguards:

> Since Enfield's special use permit requirement is not a licensing scheme, it need not ... provide the procedural safeguards required by *Freedman.* Instead, the special use permit requirement must satisfy the standard of review applied to content-neutral time, place, and manner regulations. The Supreme Court has held that such regulations are acceptable so long as they (1) serve a substantial government interest, and (2) do not limit unreasonably other alternative avenues of communication.[3]

*Id.* (citations omitted).

Plaintiffs attempt to distinguish *Marty's Adult World* by observing that adult caba-

rets may not operate anywhere in New Haven without a special exception, in contrast to the video booth businesses permitted to operate without a special use permit in Enfield's Business Regional District. However, defendants point out that exotic or nude dancing, the type of expressive activity that takes place in an adult cabaret, may be offered in certain parts of the city as of right in the context of an adult theater or an adult entertainment center. Defendants suggest that, when determining whether a given regulation is a licensing scheme or a time, place, and manner restriction, a court should consider the regulatory scheme in its entirety and determine whether the expressive activity may be offered as of right somewhere in the city, even if not in the precise commercial context sought by the plaintiffs.

In *Marty's Adult World,* the plaintiffs argued that they were subject to a licensing scheme in light of an ordinance stating that "All uses within the Business Regional District require review and approval by the Enfield Planning and Zoning Commission." Thus, the plaintiffs argued that they could not locate their video booth business anywhere in the town as of right. However, the Second Circuit declined to read the quoted provision in isolation; instead, the court considered the full range of rules affecting the operation of viewing booths. Because another provision expressly permitted "indoor theaters" in the Business Regional District, the court concluded that the Planning and Zoning Commission "could not deny approval simply because" the plaintiffs wished to offer video booths; hence, Enfield's zoning code was not a licensing scheme, but a time, place, and manner regulation. Similarly, in the present case, while plaintiffs may not open an adult cabaret anywhere in the city without approval, the city may not preclude the operation of plaintiffs' business in zones BD, BD-1, BE, IL, or IH "simply because" plaintiffs wish to offer topless dancing. Rather, the ordinance restricts dancing in those zones

**3.** Plaintiffs have not argued that the adult business ordinance fails to satisfy either of these two requirements.

only in the particular context of a dining or drinking establishment.

It is well recognized that speakers have "no constitutionally protected franchise on the forum of [their] choice." *Irish Lesbian and Gay Organization v. Giuliani*, 918 F.Supp. 732, 744 (S.D.N.Y.1996); *see also Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981). Accordingly, the Second Circuit recognized in *Marty's Adult World* that the full range of prior restraint safeguards are not applicable when a business need only move from one part of a city to another in order to avoid the prior restraint. Plaintiffs have offered no reason why this Court should reach a different conclusion when a business need only opt not to serve food and beverages in order to avoid the restraint that is complained of. Therefore, the Court concludes that the city's regulation of adult cabarets is not subject to the *Freedman* and *Lakewood* requirements for licensing schemes.

■ Plaintiffs further attempt to distinguish *Marty's Adult World* by suggesting that New Haven's adult business ordinance is not a content-neutral regulation. Plaintiffs observe that the ordinance treats certain dining and drinking establishments differently than others based on whether they offer exotic dancing. However, plaintiffs do not show how the present case differs from *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). In *Renton*, the Supreme Court considered whether a zoning ordinance may be considered content-neutral when it "treats theaters that specialize in adult films differently from other kinds of theaters." 475 U.S. at 47, 106 S.Ct. at 928. The Court concluded that such an ordinance was content-neutral when it was "aimed not at the *content* of the films shown at 'adult motion picture theaters,' but rather at the *secondary effects* of such theaters on the surrounding community." *Id.* at 47–49, 106 S.Ct. at 928–929 (emphasis in the original). Thus, the Court upheld Renton's ordinance because "by its terms [it] is designed to prevent crime, protect the city's retail trade, maintain property values, and generally protect and preserve the quality of

the city's neighborhoods, commercial districts, and the quality of urban life." *Id.* at 48, 106 S.Ct. at 929 (internal quotation marks and alterations omitted). Similarly, New Haven's adult business ordinance expressly states that the law is intended to prevent the "deleterious effect" of adult uses "on adjacent business and residential areas"; that studies in other cities have established a "close association" between "sexually oriented businesses" and crime and neighborhood blight; that regulation of such businesses "is necessary to ... prevent erosion of the character of [New Haven's] neighborhoods"; and that the city "wishes to minimize the conflict among uses by restricting the proximity of adult businesses to residence zones, schools, and places of worship." (Defs.' Ex. 2.) Plaintiffs have made no effort to distinguish these stated purposes of the New Haven ordinance from those found to render the Renton ordinance content neutral. Accordingly, the Court concludes that New Haven's ordinance is also content neutral, and that *Marty's Adult World* may not be distinguished on the basis that the New Haven ordinance imposes regulations on adult businesses that are not imposed on other businesses.

Plaintiffs argue that the present case is identical to *11126 Baltimore Boulevard, Inc. v. Prince George's County*, 58 F.3d 988 (4th Cir.1995), in which the Fourth Circuit applied the *Freedman* procedural safeguards to a county ordinance requiring adult bookstores to obtain special exceptions. However, there was no claim in that case that adult bookstores could operate as of right in at least certain parts of the county. The case would be more applicable if the challenged ordinance permitted adult bookstores in some areas, but required, for instance, all adult bookstore *cafes* to obtain a special exception. In the absence of such circumstances, the Court finds the present case to be distinguishable in light of the fact that New Haven permits topless dancing as of right in certain parts of the city.

Although plaintiffs have not demonstrated a likelihood of success with respect to the applicability of the licensing scheme safeguards to New Haven's adult cabaret regulations, the Court notes that the regulations

are still subject to other forms of First Amendment review. Specifically, the regulations are only "acceptable so long as they (1) serve a substantial government interest, and (2) do not limit unreasonably other alternative avenues of communication." *Marty's Adult World*, 20 F.3d at 515. However, plaintiffs have not challenged the regulations with respect to these requirements. Accordingly, the Court need not address these issues in the present motion.

### *Conclusion*

For the foregoing reasons, plaintiffs' Motion for Preliminary Injunction (Doc. 21) is DENIED.

IT IS SO ORDERED.